1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| STATE OF WASHINGTON, | NO.   2:20-cv-01105 |
| Plaintiff, | DECLARATION OF DAVID REED |
| v. | |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ALEX M. AZAR, in his official capacity as the Secretary of the United States Department of Health and Human Services, | |
| Defendants. | |

I, David Reed, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct:

1.      I am over the age of 18, have personal knowledge of the facts and circumstances set forth in this Declaration, and am competent to testify in this matter.

2.      I am a Section Manager for the Washington Health Care Authority and am responsible for oversight of Adult Behavioral Health Services and managing statewide implementation of the Involuntary Treatment Act and related crisis service activities.

**ATTORNEY GENERAL OF WASHINGTON**
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

3.      I am familiar with the rule of the Department of Health and Human Services entitled "Nondiscrimination in Health and Health Education Programs or Activities, Delegation of Authority," 85 Fed. Reg. 37160-248 (the "Final Rule"), which was published in the Federal Register on June 19, 2020. I understand that the Final Rule provides that the prohibition of discrimination "on the basis of sex" in Section 1557 of the Affordable Care Act does not include discrimination based on pregnancy termination, sexual orientation, or transgender status or gender identity, and that the previous rule did specifically prohibit discrimination based on transgender status or gender identity and sex stereotyping.

4.      I have been asked to evaluate how the Final Rule will impact the finances of the Washington State Healthcare Authority.

5.      I understand the Washington State Office of the Insurance Commissioner has explained that approximately 1,583,681 Washingtonians receive healthcare coverage through a group healthcare plan funded by an employer under the Employee Retirement Income and Security Act of 1974, or a plan that is part of the Federal Employees Health Benefits Program, and so the healthcare coverage plans of these Washingtonians will not be prevented from discrimination in healthcare on the basis of pregnancy termination, sexual orientation, and transgender status or gender identity. Declaration of Mike Kreidler, ¶ 14.

6.      I further understand that the Washington State Department of Health (DOH) estimates that, as a result of this, between 5,271 and 16,266 transgender Washingtonians will lose healthcare coverage for transgender healthcare services such as hormone therapies and surgical gender transition procedures. Declaration of Michele Roberts, ¶ 15.

7.      I also understand that DOH further estimates that this loss of healthcare coverage will result in between 670 to 2,069 new cases of moderate to severe depression every year if the new Final Rule takes effect, as well as delays and postponement of necessary medical care, increased incidence of violence against transgender individuals, and increased substance abuse among this population. *Id.* at ¶¶ 16-19, 21. DOH also estimates greater rates

DECLARATION OF DAVID REED                                 2                    ATTORNEY GENERAL OF WASHINGTON
                                                                                                    Civil Rights Division
                                                                                                800 Fifth Avenue, Suite 2000
                                                                                                 Seattle, WA  98104-3188
                                                                                                       (206) 464-7744

1   of suicidality, including between 527 to 1,627 more attempted suicides by transgender persons

2   over the next several decades. *Id.* at 22.

3       8.      Understanding that DOH estimates greater incidence of mental health crisis

4   among transgender individuals in Washington as a result of the Final Rule, I have evaluated

5   the expected impact of this on Washington State funds from the provision of mental health

6   and crisis stabilization care.

7       9.      Washington State contracts for urgent mental health and crisis stabilization

8   care through regional Administrative Service Organizations (ASOs) that contract directly with

9   social service provider organizations. These provider organizations include community

10  behavioral health treatment centers,   crisis care facilities, and evaluation and treatment

11  centers which can provide involuntary treatment, throughout the State. ASOs are funded

12  through general fund state dollars, mental health block grant funds and substance abuse block

13  grant funds. In those cases in which a contracted ASO crisis provider serves a Medicaid

14  enrollee, the ASO is expected to bill the appropriate Medicaid plan to cover the Medicaid

15  eligible services. While the funds that are provided for these services through the ASOs may

16  in some cases be reimbursable as Medicaid expenditures, in many cases are not, and end up

17  being incurred directly and only by Washington State.

18      10.     In evaluating data from prior years of service to individuals in crisis in

19  Washington State, we estimate that an individual who suffers moderate or severe depression is

20  likely to experience, on average, three crisis episodes per year, each comprising four distinct

21  crisis services, for a total average of 12 hours of crisis services per year.

22      11.     Of these individuals receiving crisis services, we estimate that approximately

23  4% (between 27 and 83 people) of them will require or be able to access crisis stabliziation

24  services, with an average of 4 days per stay at $538.09 per day. This will be between

25  approximately $15,743.43 and $44,661.47 per year of new costs if the Final Rule takes effect.

26

12.     We also know that 2% of the general population had mental health evaluations under the Involuntary Treatment Act, which is a Washington law that allows anyone over the age of 13 who does not agree to mental health treatment to be evaluated for involuntary commitment to an inpatient mental health treatment center. We would assume that a higher proportion of the transgender individuals who suffer depression as a result of lost healthcare coverage for transgender services would require such evaluation, at the rate of 50%. Therefore, we expect between 335 and 1,035 Involuntary Treatment Act evaluations, at a cost of $538.40, for a total of between $180,364 and $557,244 in new costs of this kind if the Final Rule takes effect.

13.     Generally, of the individuals who are evaluated, an average of 45% of those evaluated are detained and provided with involuntary inpatient psychiatric services. We expect the increased incidence of Involuntary Treatment Act evaluations for transgender individuals in crisis as a result of lost healthcare coverage for transgender healthcare services would result in between 151 and 466 detentions. These initial detentions average five days at an Evaluation and Treatment Center or a community hospital, at an average cost of $861 per day or $4,305 total. Of the number of individuals detained, a percentage will not be stabilized during the initial detention and require a 14 day commitment. The statewide historical average is that 40% of detained indiviudals will require 14 day commitment orders, with an average bed day cost of $861 and a total of $12,054. In addition to the foregoing costs, we therefore also expect approximately between $650,000 and $2,006,130 in annual Involuntary Treatment Act mental health crisis detention costs and an additional $728,061 to $2,246,865 in commitment costs if the Final Rule takes effect.

14.     All of the foregoing costs are estimated on the increased incidence of moderate to severe depression, and do not include additional costs for the crisis care services for individuals who require them because they have suffered a crisis because of substance abuse

1 │ or being a victim of violence, the incidence of which DOH also estimates to increase as a

2 │ result of the Final Rule. *Id.* at ¶¶ 16-19, 21.

3 │        I declare under penalty of perjury under the laws of the United States and the State of

4 │ Washington that the foregoing is true and accurate.

5 │        DATED this 13th day of July, 2020, in Olympia, Washington.

6 │

7 │                            DAVID REED

8 │

9 │

10 │

11 │

12 │

13 │

14 │

15 │

16 │

17 │

18 │

19 │

20 │

21 │

22 │

23 │

24 │

25 │

26 │

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744