# APPENDIX A

The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ALEX M. AZAR, in his official capacity as the Secretary of the United States Department of Health and Human Services;<br><br>Defendants. | NO. 2:20-cv-01105-JLR<br><br>BRIEF OF AMICI NORTHWEST HEALTH LAW ADVOCATES ET AL., IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION<br><br>**Noted for: August 7, 2020** |

AMICUS CURIAE BRIEF BY NORTHWEST HEALTH LAW ADVOCATES ET AL. IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

## Table of Contents

I. INTRODUCTION AND STATEMENT OF INTEREST ............ 1

II. ARGUMENT ............ 4

A. Before the ACA, Health Insurers and Third-Party Administrators for Self-Funded Plans Could Discriminate with Impunity. ............ 4

B. Congress Intended Anti-Discrimination Protections to Apply to Employer-Sponsored Health Coverage. ............ 6

C. The ACA Broadly Ensures Comprehensive Coverage Without Discrimination on the Basis of Race, Gender, Age or Disability. ............ 9

D. No Court or State Regulator Has Adopted HHS's Constrained Interpretation of "Covered Entity." ............ 12

E. There Is No "Good Reason" for HHS's Proposed Limitation on the Definition of "Health Program or Activity." ............ 14

III. CONCLUSION ............ 15

AMICUS CURIAE BRIEF BY NORTHWEST HEALTH LAW ADVOCATES ET AL. IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION – ii

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

## Table of Authorities

**Cases**

*Arizona Libertarian Party v. Reagan*, 798 F.3d 723 (9th Cir. 2015)....................14

*Boyden v. Conlin*, 341 F. Supp. 3d 979 (W.D. Wis. 2018)....................12

*Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817 (D.S.C. 2015) ....................15

*Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778 (1984) ....................10

*Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117 (2016) ....................17

*Esparza v. Univ. Med. Ctr. Mgmt. Corp.*, 2017 U.S. Dist. LEXIS 142944 (E.D. La. Sep. 5, 2017)....................15

*FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 129 S. Ct. 1800 (2009) ....................17

*Griffin v. Breckenridge*, 403 U.S. 88, 91 S. Ct. 1790 (1971) ....................8

*Hurley v. Loma Linda Univ. Med. Ctr.*, 2014 U.S. Dist. LEXIS 18018 (C.D. Cal. Feb. 12, 2014)....................16

*Kadel v. Folwell*, 2020 U.S. Dist. LEXIS 42586 (M.D.N.C. Mar. 10, 2020)....................16

*King v. Burwell*, __ U.S. __, 135 S. Ct. 2480 (2015) ....................7, 8

*Mansourian v. Bd. of Regents of the Univ. of Cal.*, 816 F. Supp. 2d 869 (E.D. Cal. 2011)....................14

*Micek v. City of Chi.*, 1999 U.S. Dist. LEXIS 16263 (N.D. Ill. Sep. 30, 1999) ....................5

AMICUS CURIAE BRIEF BY NORTHWEST HEALTH LAW ADVOCATES ET AL. IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION – iii

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 132 S. Ct. 2566 (2012) ........ 8, 16

*New York State Dept. of Social Servs. v. Dublino*, 413 U. S. 405, 93 S. Ct. 2507 (1973) ........ 7

*Olmstead v. L.C.*, 527 U.S. 581, 119 S. Ct. 2176 (1999) ........ 4

*Rumble v. Fairview Health Servs.*, 2015 U.S. Dist. LEXIS 31591 (D. Minn. Mar. 16, 2015) ........ 14, 15

*Schmitt v. Kaiser Found. Health Plan of Wash.*, 2020 U.S. App. LEXIS 21902 (9th Cir. July 14, 2020) ........ passim

*Schroeder v. Chicago*, 927 F.2d 957 (7th Cir. 1991) ........ 14

*Standridge v. Union Pac. R.R. Co. (In re Union Pac. R.R. Emp't Practices Litig.)*, 479 F.3d 936 (8th Cir. 2007) ........ 5

*Tovar v. Essentia Health*, 342 F. Supp. 3d 947 (D. Minn. 2018) ........ 12, 16

*United States v. Baylor Univ. Med. Ctr.*, 736 F.2d 1039 (5th Cir. 1984) ........ 13

*Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104 (9th Cir. 2000) ........ 5, 6

**Statutes**

42 U.S.C. §12111(2) ........ 6

42 U.S.C. §12201(c) ........ 6

42 U.S.C. §18022(b)(1) ........ 10

42 U.S.C. §18022(b)(4)(B) ........ 10

42 U.S.C. §18116(a) ........ 6, 7, 10

42 U.S.C. §300gg ........ 9

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

42 U.S.C. §300gg-1 .......... 9

42 U.S.C. §300gg-2 .......... 9

42 U.S.C. §300gg-3 .......... 9

42 U.S.C. §300gg-4 .......... 9

42 U.S.C. §300gg-6 .......... 10

RCW 48.43.0128 .......... 11

**Regulations**

45 C.F.R. §156.110(d) .......... 10

45 C.F.R. §156.125(a) .......... 10

45 C.F.R. §84.3(h) .......... 5, 16

45 C.F.R. §92.3 .......... 11

45 C.F.R. §92.3(b) .......... 7, 12

45 C.F.R. §92.3(c) .......... 7

81 Fed. Reg. 31,379 .......... 9

81 Fed. Reg. 31,386 .......... 9

85 Fed. Reg. 37,163 .......... 17

85 Fed. Reg. 37,173 .......... 12

85 Fed. Reg. 37,174 .......... 12

85 Fed. Reg. 37,244 .......... 7, 12

85 Fed. Reg. 37,245 .......... 7, 12

**Legislative History**

111 CONG. REC., Vol. 156, No. 45, E462 (March 23, 2010) .......... 8, 9

SHB 2338 (effective June 11, 2020) .......... 11

AMICUS CURIAE BRIEF BY NORTHWEST HEALTH LAW ADVOCATES ET AL. IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION – v

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

## Rules

Fed. R. Evid. 201(b) .......... 14

## Other Authorities

Bulletin No. 18-02, State of Idaho, Department of Insurance .......... 15

AMICUS CURIAE BRIEF BY NORTHWEST HEALTH LAW ADVOCATES ET AL. IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION – vi

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

## I. INTRODUCTION AND STATEMENT OF INTEREST

Under the 2020 Final Rule regarding Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), the U.S. Department of Health and Human Services ("HHS") proposes to dramatically limit anti-discrimination protections now generally applied to all health insurers. The new Final Rule, if permitted to stand, will strip anti-discrimination protections from millions of people enrolled in employer-sponsored health plans. The new Final Rule must be enjoined because it is inconsistent with (1) the plain language of the statute it purports to interpret, (2) long-standing interpretations from regulators across the country, and (3) decisions from courts, including a recent decision from the Ninth Circuit.

For nearly a decade, Section 1557, the anti-discrimination provision of the ACA, has been uniformly understood and interpreted to apply to all health plans issued and administered by a covered insurer. An insurer is "covered" by Section 1557 if it receives any federal assistance. If it does, then none of its health plans are permitted to discriminate – a principle that is consistent with long-standing anti-discrimination laws in other contexts. The new Final Rule, however, purports to roll back protections for most health plans leaving ***only*** health plans sold through the ACA Marketplaces, and Medicaid/Medicare managed care plans subject to federal anti-discrimination law. All other health plans offered by an insurer would be permitted to discriminate with impunity. The loss of federal anti-discrimination protection will invariably lead to a loss of access to medically needed care for people with disabilities, transgender enrollees and others. This cannot be squared with Congress' intent in enacting Section 1557.

A recent Ninth Circuit decision, *Schmitt v. Kaiser Found. Health Plan of Wash.*, demonstrates the intended breadth of ACA's Section 1557, and the fact that it applies to employer-sponsored health plans – the exact type of health coverage that would be

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

***excluded*** by the proposed 2020 Final Rule. *Id.*, 2020 U.S. App. LEXIS 21902, at *8 (9th Cir. July 14, 2020). In that case, two plaintiffs with disabling hearing loss who are enrolled in Kaiser health insurance through their employment challenged Kaiser's exclusion of all treatment for hearing loss (except for cochlear implants) as a form of disability discrimination. *Id.* at *8–*9. The Ninth Circuit concluded that the ACA imposes "an affirmative obligation not to discriminate in the provision of health care – ***in particular to consider the needs of disabled people and not design plan benefits in ways that discriminate against them***." *Id.* at *18–*19 (emphasis added). It found that a blanket exclusion of all treatment for a disabling health condition in a health insurance plan "raises an inference of discrimination."[1] *See id.* at *26.

The 2020 Final Rule would undo the anti-discrimination rights that the Ninth Circuit recognized. If health insurers are not generally subject to the ACA's anti-discrimination law, those Americans who were historically shut out of health insurance coverage – including persons with disabilities and serious health conditions, LGBTQ+ individuals, pregnant women, the elderly, and individuals with limited English proficiency, among others – may be subject once again to unfair discrimination in the design of health plan benefits. The 2020 Final Rule, including the proposed limitation on the definition of "covered entities" under Section 1557, should be enjoined as beyond HHS's authority and arbitrary and capricious.

Proposed Amici, Northwest Health Law Advocates ("NoHLA") and two Washington residents, C.P. and M.D., have a strong interest in ensuring that Washington residents received the full benefits of the ACA's health care reforms including its non-discrimination protections:

---

[1] The case was remanded to the trial court so that the plaintiffs could amend their complaint to better demonstrate that the exclusion of non-cochlear hearing loss treatment is a "proxy" for excluding individuals with disabling hearing loss. *Id.,* at *29–*31.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

***NoHLA*** is a nonprofit legal organization focused on promoting access to comprehensive, affordable health care for Washington state residents, with special attention to the needs of low-income and vulnerable populations. Varon Decl., ¶2. NoHLA submitted comments regarding both the 2016 and 2020 HHS rulemaking procedures, supported legislation in Washington state to enact a "mini-Section 1557" to protect the anti-discrimination rights of Washington residents in Washington insured plans, and was granted permission to submit an amicus brief in *Schmitt v. Kaiser*, Case No. 18-35892. *Id.*, ¶¶3-5.

***C.P., by and through his parents, P.P. and N.P.,*** is a 15-year-old boy who lives in Bremerton Washington who is diagnosed with gender dysphoria. P.P. Decl., ¶1. C.P. has sought coverage for medically necessary treatment for his gender dysphoria from his self-funded health benefit plan through his parent's employment with Catholic Health Initiatives Franciscan Health System ("CHI"), now known as CommonSpirit Health. *Id.*, ¶¶1-3. C.P. has been denied coverage of treatment and services available under his health plan solely because CHI and its third-party administrator ("TPA"), Blue Cross Blue Shield of Illinois ("BCBSIL"), have determined that the services are a form of "gender reassignment surgery." *Id.* At the same time, CHI and BCBSIL cover the services when provided to cisgender enrollees. *Id.* If the 2020 Final Rule is implemented such that Section 1557 does not apply to C.P.'s health coverage, CHI and BCBSIL will continue to exclude the gender affirming treatment he seeks in the future and to discriminate against him on the basis of his gender.

***M.D., by and through her parents, C.D., and A.D,*** is a 22-month-old toddler who lives with her parents in Spokane, Washington. C.D. Decl., ¶1. She is severely disabled and requires life-sustaining treatment with a tracheostomy and ventilator. *Id.* To treat her condition and enable her to live at home with her parents instead of an institution

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

like a hospital or skilled nursing facility, M.D. requires in-home skilled nursing care. *Id.*, ¶¶3-6. M.D. receives coverage through a self-funded health benefit plan that is claims administered by Aetna Life Insurance Company, Inc., through her father's employment with Salesforce.com. *Id.*, ¶2. Aetna, on behalf of Salesforce.com, offers only a very limited benefit for in-home skilled nursing care that will run out in a few months. *Id.*, ¶¶4-5. If Section 1557 does not apply to M.D.'s coverage, Aetna will be permitted to limit the life-sustaining skilled nursing benefit that M.D. needs. When the limited in-home nursing care benefit in the Aetna plan is exhausted, M.D.'s parents may be forced to institutionalize her so that she can continue to receive her life-saving treatment. *Id.*, ¶¶6-7. Benefit designs that result in the unnecessary institutionalization of disabled individuals is a form of disability discrimination that will no longer be prohibited for M.D. and others. *See Olmstead v. L.C.*, 527 U.S. 581, 119 S. Ct. 2176 (1999).

All three proposed Amici have a strong interest in ensuring that HHS's 2020 Final Rule is enjoined from taking effect. Without swift injunctive action, the ACA's anti-discrimination law will be eviscerated by the new HHS Rule. The term "health program or activity" under the ACA's Section 1557 should include health insurers and employer-sponsored health benefit plans when any part of the insurer receives federal financial assistance.

## II. ARGUMENT

### A. Before the ACA, Health Insurers and Third-Party Administrators for Self-Funded Plans Could Discriminate with Impunity.

The ACA marked a revolutionary change in how health coverage is designed and administered. Before the ACA, insurance companies could freely discriminate against disabled enrollees, women, and others, at least in the design of health benefits. *Schmitt*, 2020 U.S. App. LEXIS 21902, at *3 ("Prior to the ACA's enactment, an insurer could generally design plans to offer or exclude benefits as it saw fit without violating federal

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

antidiscrimination law."); *see e.g.*, *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1115-1117 (9th Cir. 2000) (The Americans with Disabilities Act ("ADA") does not prohibit discriminatory benefit design on the basis of disability by insurers); *Micek v. City of Chi.*, 1999 U.S. Dist. LEXIS 16263, at *22 (N.D. Ill. Sep. 30, 1999) (The ADA does not regulate the discriminatory content of an employee's health benefit package); *Standridge v. Union Pac. R.R. Co. (In re Union Pac. R.R. Emp't Practices Litig.)*, 479 F.3d 936, 943 (8th Cir. 2007) (health plan's denial of coverage for contraception is non-discriminatory, despite the fact that only women can become pregnant if contraception is denied).

In fact, under Section 504 of the Rehabilitation Act, the definition of "federal financial assistance" specifically ***excluded*** contracts of insurance. *See* 45 C.F.R. §84.3(h) ("Federal financial assistance means any grant, loan, contract (***other than … a contract of insurance***") (emphasis added). Nor were "contracts of insurance" generally subject to the Title I of the ADA. *See* 42 U.S.C. §12111(2). The ADA included a "safe harbor" that permitted the use of disability discrimination in the design of benefits, as part of "medical underwriting." *See* 42 U.S.C. §12201(c). The Ninth Circuit's decision to exempt benefit design discrimination in *Weyer* was based on Congress's failure to specifically include "contracts of insurance" when crafting anti-discrimination law, such as the ADA: "[H]ad Congress intended to control which coverages had to be offered by employers [and insurers] it would have spoken more plainly because of the well-established marketing process to the contrary." *Id.*, 198 F.3d at 1116.

With the ACA, Congress has now spoken more plainly. The ACA explicitly prohibits discrimination in "health programs or activities" any part of which, receive federal financial assistance:

> [A]n individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

> seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination ***under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance***, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments).

42 U.S.C. §18116(a). Under the plain language of the statute, health insurance contracts that receive federal financial assistance are included within the term "health program or activity." *Id.* Thus, health insurers that receive federal financial assistance are subject to the ACA's anti-discrimination protections. *Id.*

Despite the plain language of the statute, the 2020 HHS Final Rule impermissibly ***reads out*** "contracts of insurance" from the ACA in order to limit the scope of Section 1557. The new rule declares that health insurance companies are ***not*** principally engaged in providing healthcare in order to generally excuse them from the anti-discrimination obligations of the statute. *See* proposed 45 C.F.R. §92.3(b), (c) , 85 Fed. Reg. 37,244–45. The proposed rule is contrary to the plain language of the statute and what Congress intended. Indeed, until HHS proposed its 2020 Final Rule, every court and state regulator to consider this issue has held that health insurers are generally "covered entities" under Section 1557. To conclude otherwise would undermine the ACA in its entirety.

### B. Congress Intended Anti-Discrimination Protections to Apply to Employer-Sponsored Health Coverage.

This Court must consider the ACA as a whole when interpreting Section 1557. "A fair reading of legislation demands a fair understanding of the legislative plan." *King v. Burwell*, __ U.S. __, 135 S. Ct. 2480, 2496 (2015); *see also id.*, at 2493, *quoting New York State Dept. of Social Servs. v. Dublino*, 413 U. S. 405, 419-420, 93 S. Ct. 2507 (1973) ("We cannot interpret federal statutes to negate their own stated purposes"). This is true even though

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

the ACA contains "examples of inartful drafting." *Id.*, at 2492. A court must construe the ACA's statutory language within its context and "with a view to [the passage's] place in the overall statutory scheme." *Id.* Moreover, Congressional intent must be determined in light of the remedial nature of the ACA. Comprehensive remedial statutes like the ACA are generally accorded "a sweep as broad as their language." *Griffin v. Breckenridge*, 403 U.S. 88, 97, 91 S. Ct. 1790 (1971).

"In the Affordable Care Act, Congress addressed the problem of those who cannot obtain insurance coverage because of pre-existing conditions or other health issues." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 547, 132 S. Ct. 2566 (2012). The ACA was intended to provide comprehensive health care reform to ensure that every American, including persons with disabilities, LGBTQ+ individuals, women, persons with limited English proficiency, etc., would have access to quality, affordable health care and health coverage. *See* 111 CONG. REC. Vol. 156, No. 45, E462 (March 23, 2010) ) (attached as Hamburger Decl., *Exh. A*). This goal extended to ending discrimination within the benefit design of health plans subject to the ACA. As Congressman Bill Pascrell, Jr. noted, the ACA's reforms were particularly directed at ending discrimination in the provision of health insurance coverage:

> [The ACA will e]nsure that ***essential benefits not be subject to denial on the basis of the individual's present or predicted disability***, degree of medical dependency or quality of life. Taken together, these [ACA requirements] are strong protections that will help ensure that the essential health benefits package … will take into account the needs of people with brain injury and other disabilities and chronic conditions and not impose value judgments about disability and quality of life. This legislative language makes clear that ***Congress understands the subtle discrimination that can occur against people with brain injury and other disabilities in the area of benefit design.***



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

*Id.* (emphasis added); *see also,* 81 Fed. Reg. 31,379 ("[A] fundamental purpose of the ACA is to ensure that health services are available broadly on a nondiscriminatory basis to individuals throughout the country"); 81 Fed. Reg. 31,386 (A central purpose of the ACA is "ensuring that entities principally engaged in health services, ***health insurance coverage*** or other health coverage do not discriminate in any of their programs or activities, thereby enhancing access to services and coverage") (emphasis added). Congress' expansion of anti-discrimination law to apply to health insurance contracts was deliberate and groundbreaking.

Congress intended a sweeping legislative reform with the ACA. The law prohibits insurers from discrimination based upon health conditions in enrollment and re-enrollment. *See* 42 U.S.C. §§300gg-1; §300gg-2; §300gg-4. It ends the use of discriminatory pre-existing condition limitations in ACA-regulated health insurance. 42 U.S.C. §300gg-3. It prohibits insurers from using disability, health status and medical conditions as a basis of denying eligibility for coverage. 42 U.S.C. §300gg-4(a). It restricts insurers from discriminating against people with health conditions when it comes to paying for premiums. *See* 42 U.S.C. §300gg.

Congress not only intended to make it easier for all Americans (including people with disabilities and serious health conditions) to purchase health coverage, it also intended to end discrimination in the type of benefits offered. Without this protection, insurers could simply re-write illegal pre-existing condition limitations as benefit exclusions. Congress mandated that ACA-regulated health plans must offer comprehensive health benefits in ten broad categories of coverage, known as Essential Health Benefits, or EHBs. 42 U.S.C. §18022(b)(1). But offering coverage within each of the ten EHBs, standing alone, is not enough to comply with the ACA. ***Insurers must also deliver EHBs in a non-discriminatory manner.*** *See* 42 U.S.C. §§300gg-6; 18022(b)(4)(B) ;

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

45 C.F.R. §§156.110(d); 156.125(a) (Insurers do "not provide EHB if its benefit design, or the implementation of its benefit design, discriminates…"); *Schmitt,* 2020 U.S. App. LEXIS 21902, at *18-19.

In addition to the specific non-discrimination requirement for EHBs, Congress included a ***general*** prohibition of discrimination in any health program or activity with Section 1557. *See* 42 U.S.C. §18116(a). When read within the context of the ACA, it is clear that Congress intended Section 1557 to apply broadly to any health program or activity that receives federal financial assistance in any part of its operations, including "contracts of insurance." *Id.; see Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842, 104 S. Ct. 2778 (1984) ("If the intent of Congress is clear, that is the end of the matter.").

**C. The ACA Broadly Ensures Comprehensive Coverage Without Discrimination on the Basis of Race, Gender, Age or Disability.**

As noted above, the Ninth Circuit recently affirmed Section 1557's role in protecting health insurance enrollees from illegal discrimination in *Schmitt v. Kaiser Found. Health Plan of Wash.* "Section 1557 incorporates by reference the grounds protected by four earlier nondiscrimination statutes and prohibits discrimination on those grounds in the health care system—as relevant here, ***in health insurance contracts***." *Id.,* 2020 U.S. App. LEXIS 21902, at *10 (emphasis added). While Section 1557 broadly addresses four kinds of discrimination, it is narrowly focused on the health care system – including "contracts of insurance." *See id.,* at *12. Specifically, the Ninth Circuit found that a health insurer may engage in intentional discriminatory conduct when it designs health insurance benefits in a discriminatory manner. *Id.,* at *17.

The *Schmitt* plaintiffs were (and remain) enrolled in employer-sponsored health insurance. *Id.,* at *8; Hamburger Decl., ¶2. They are not enrolled in health insurance either through an ACA marketplace plan or Medicaid/Medicare. *See* 85 Fed. Reg.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

37,244-45, *citing to* 45 C.F.R. §92.3. If the proposed 2020 Final Rule is allowed to take effect, the *Schmitt* plaintiffs' current health coverage could be excluded from federal anti-discrimination protections, despite the Ninth Circuit's recent ruling to the contrary.[2]

Likewise, proposed amici C.P. and M.D., are enrolled in self-funded employer-sponsored plans that are administered by Aetna and BCBSIL, both health insurers acting as TPAs. Presently, courts have held that TPAs may be subject to Section 1557's anti-discrimination protections. *See, e.g., Boyden v. Conlin*, 341 F. Supp. 3d 979, 997-98 (W.D. Wis. 2018) (third-party administrator is a proper defendants in a Section 1557 claim since it recommends the design of benefits as well as administering the plan); *Tovar v. Essentia Health*, 342 F. Supp. 3d 947, 954 (D. Minn. 2018) (same). If the 2020 Final Rule takes effect, Amici C.P. and M.D. will lose the Section 1557 protections that they now enjoy.[3] *See* 85 Fed. Reg. 37,173-174 ("To the extent that employer-sponsored group health plans do not receive Federal financial assistance and are not principally engaged in the business of providing healthcare (as set forth in the rule) they would not be covered entities.").[4]

Federal regulators also improperly limit the scope of anti-discrimination law in the 2020 Final Rule to only those activities for which a covered entity that is not principally engaged in the business of providing healthcare (*i.e.,* a health insurer) receives federal financial assistance. *See proposed* 45 C.F.R. §92.3(b), 85 Fed. Reg. 37,244

---

[2]The Washington legislature has enacted state anti-discrimination law to protect the *Schmitt* plaintiffs and others enrolled in ***insured*** health plans. *See* SHB 2338 (effective June 11, 2020) (amending anti-discrimination requirements in RCW 48.43.0128 to apply to virtually all Washington health plans issued by health carriers, like Kaiser); *See* Dkt. No. 10, Kreidler Decl., ¶11.

[3] Under the 2020 Final Rule, amici C.P. may also be unable to enforce Section 1557's anti-discrimination law against CHI, a "health program or activity" under the 2020 Final Rule which now may claim a religious exemption. 85 Fed. Reg. 37,245. There is, however, no religious exemption included within Section 1557. *See* Dkt. No. 4, pp. 12-13.

[4] Unlike the *Schmitt* plaintiffs, Amici C.P. and M.D. are ***not*** otherwise protected by state anti-discrimination law. *See* Dkt. No. 10, Kreidler Decl., ¶¶13-14.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

("the requirements applicable to a 'health program or activity' under this part shall apply to such entity's operations only to the extent any such operation receives federal financial assistance."). In other words, under the new rule, health insurers would be subject to anti-discrimination law ***only*** when delivering health plans in the ACA marketplace or for Medicaid or Medicare. In all other activities (such as delivering employer-sponsored insurance or acting as TPAs), health insurers would be free to discriminate, despite their receipt of federal assistance.

For example, under the 2020 Final Rule, an insurance company could be required to cover medications to treat HIV/AIDS for disabled enrollees through the ACA marketplaces in order to comply with Section 1557, but the same insurer could avoid the identical coverage in its private health coverage.[5] Insurers could exclude all coverage for developmental disabilities in private health insurance, while, at the same time, such an exclusion would be illegal in a Medicaid managed care plan or on the ACA marketplace. Allowing health care discrimination to remain in employer-sponsored health coverage was not what Congress intended. The ACA's purpose was to eliminate all such discrimination.

The Final Rule ignores long-standing interpretations of civil rights statutes that receipt of any federal financial assistance renders the entire entity subject to anti-discrimination law. *See United States v. Baylor Univ. Med. Ctr.*, 736 F.2d 1039, 1042 (5th Cir. 1984) (Receipt of Medicaid or Medicare funds in any part of an entity's program brought the entire program into the scope of Section 504 of the Rehabilitation Act; anti-discrimination protections were not limited to only those direct beneficiaries of the Medicaid or Medicare funds); *Schroeder v. Chicago*, 927 F.2d 957, 962 (7th Cir. 1991) ("[T]he various civil rights statutes including the Rehabilitation Act [ ] apply to the

[5] Other laws (such as state insurance laws) may still mandate such coverage.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

entirety of any state or local institution that had a program or activity funded by the federal government."); *Mansourian v. Bd. of Regents of the Univ. of Cal.*, 816 F. Supp. 2d 869, 917 (E.D. Cal. 2011) ("[I]f any arm of an education institution received federal funds, the institution as a whole must comply with Title IX's provisions."); *Rumble v. Fairview Health Servs.*, 2015 U.S. Dist. LEXIS 31591, at *34 (D. Minn. Mar. 16, 2015) ("[A]s long as part of an organization or entity receives federal funding or subsidies of some sort, the entire organization is subject to the anti-discrimination requirements of Section 1557."). HHS cannot unilaterally limit the scope of anti-discrimination law to just those parts of "covered entities" that receive federal financial assistance.

### D. No Court or State Regulator Has Adopted HHS's Constrained Interpretation of "Covered Entity."

Many state insurance commissioners have concluded that Section 1557 applies to all health insurers in all activities.[6] In April 2018, Idaho's insurance director issued a directive that all health benefit plans, "including the individual, small group, and large group insured markets and self-funded health benefit plans" may not discriminate on the basis of disability "such as autism" by "adopting or implementing discriminatory benefit designs." *See* Bulletin No. 18-02, State of Idaho, Department of Insurance ("[A]n exclusion of treatments for autism spectrum disorder [is] discriminatory and prohibited.").[7] The insurance regulators of Washington, Rhode Island, Pennsylvania, Minnesota, and Massachusetts, among others, have all concluded that blanket exclusions of all coverage for gender affirming treatment in health insurance plans are

---

[6] Proposed Amici respectfully request that the Court take judicial notice of the public documents from state regulators cited below. *See* Fed. R. Evid. 201(b); *Arizona Libertarian Party v. Reagan*, 798 F.3d 723, 727, n. 3 (9th Cir. 2015) ("We may take judicial notice of 'official information posted on a governmental website, the accuracy of which [is] undisputed.'").

[7] *See* https://doi.idaho.gov/DisplayPDF?Id=4924 (last visited 7/26/20).

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

discriminatory in violation of Section 1557.[8] Counsel for proposed Amici are unaware of ***any*** state regulatory guidance similar to that in the 2020 Final Rule. Hamburger Decl., ¶4.

The courts that have considered this issue have similarly concluded that Section 1557 applies more broadly than just the ACA marketplace plans and Medicaid/Medicare. *See Schmitt,* 2020 U.S. App. LEXIS 21902, at *10 (private employer-sponsored health plans are subject to Section 1557); *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 849 (D.S.C. 2015) (consistent with the proposed 2016 rules, a retail pharmacy, was a "health program or activity"); *Rumble v. Fairview Health Servs.*, 2015 U.S. Dist. LEXIS 31591, at *36 (D. Minn. Mar. 16, 2015) (Emergency Physicians group was subject to Section 1557); *Esparza v. Univ. Med. Ctr. Mgmt. Corp.*, 2017 U.S. Dist. LEXIS 142944, at *20 (E.D. La. Sep. 5, 2017) (Section 1557 is not limited to only federal financial assistance provided to entities in the health insurance exchange); *Tovar v. Essentia Health*, 342 F. Supp. 3d 947, 954 (D. Minn. 2018) (TPA of a self-funded employer-sponsored plan may be subject to Section 1557: "Nothing in Section 1557, explicitly or implicitly, suggests that TPAs are exempt from the statute's nondiscrimination requirements."); *Kadel v. Folwell*, 2020 U.S. Dist. LEXIS 42586, at *26 (M.D.N.C. Mar. 10, 2020) (State employee self-funded plan may be subject to Section 1557 due to exclusion of all coverage for gender affirming treatment).

The narrow interpretation of "health program or activity" in the 2020 Final Rule makes no sense from a policy perspective. When passing the ACA, Congress was

---

[8] *See* https://www.insurance.wa.gov/sites/default/files/documents/gender-identity-discrimination-letter.pdf (broad exclusions of coverage on the basis of gender identity by health insurance carriers are prohibited); http://www.ohic.ri.gov/documents/Bulletin-2015-3-Guidance-Regarding-Prohibited-Discrimination.pdf; https://www.pabulletin.com/secure/data/vol46/46-18/762.html; http://mn.gov/commerce-stat/pdfs/bulletin-insurance-2015-5.pdf; https://www.mass.gov/files/documents/2016/07/uj/bulletin-201403.pdf (last visited 7/26/20).

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

uniquely focused on reforming the activities of ***health insurers*** in order to promote comprehensive coverage. *See Nat'l Fed'n of Indep. Bus.,* 567 U.S. at 547. Other areas of "health activity" such as hospitals and medical providers, were already subject to federal anti-discrimination law through Section 504 of the Rehabilitation Act. *See* 45 C.F.R. §84.3(h); *see e.g., Hurley v. Loma Linda Univ. Med. Ctr.*, 2014 U.S. Dist. LEXIS 18018, at *29 (C.D. Cal. Feb. 12, 2014). The main purpose of Section 1557 was to make "contracts of insurance" subject to federal anti-discrimination protections for the very first time. HHS's new Final Rule which proposes to exclude health insurers from federal anti-discrimination law, except those that participate on the ACA marketplaces and in Medicaid and Medicare, exceeds its authority, is arbitrary and capricious and should be enjoined.

### E. There Is No "Good Reason" for HHS's Proposed Limitation on the Definition of "Health Program or Activity."

When changing a rule that has "engendered serious reliance interests" an agency must provide a detailed justification for the new rule. *FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 515, 129 S. Ct. 1800 (2009) ("It would be arbitrary or capricious to ignore such [reliance]"). Since the ACA passed in 20***10***, state regulators and courts have concluded, ***without exception***, that Section 1557 regulates "health programs or activities" including health insurers. HHS offers no "reasoned analysis" for why this long-established determination must be overturned. HHS merely states that its constrained reading of "health program or activity" is "at least as reasonable as the 2016 Rule[ ]." 85 Fed. Reg. 37,163. HHS's justification for narrowing the application of "health program or activity" is, as a matter of law, insufficient. *See Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2127 (2016). "This lack of reasoned explication for a regulation that is inconsistent with the Department's longstanding earlier position results in a rule that cannot carry the force of law." *Id*. For ten years, health insurers have been subject to the requirements of

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

Section 1557's anti-discrimination law. HHS offers no "good reason" for changing the scope now.

## III. CONCLUSION

This Court should enjoin the HHS proposed Final Rule as sought by the Washington Attorney General's Office.

DATED: July 29, 2020.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC

*/s/ Eleanor Hamburger*
Eleanor Hamburger (WSBA #26478)
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303; Fax (206) 223-0246
Email: ehamburger@sylaw.com

NORTHWEST HEALTH LAW ADVOCATES

*/s/ Janet Varon*
Janet Varon (WSBA #14125)
101 Yesler Way, Suite 300
Seattle, WA 98104
Tel. (206) 325-6464
Email: janet@nohla.org

Attorneys for Proposed Amici

AMICUS CURIAE BRIEF BY NORTHWEST HEALTH LAW ADVOCATES ET AL. IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION – 15

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246