The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>       Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ALEX M. AZAR, in his official capacity as the Secretary of the United States Department of Health and Human Services,<br><br>       Defendants. | No. 2:20-cv-01105-JLR<br><br>***AMICUS CURIAE* BRIEF BY LOCAL GOVERNMENT *AMICI* IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>**Noted for:  August 7, 2020** |

*Amicus Curiae* Brief by Local Government *Amici*
in Support of Plaintiff
2:20-cv-01105-JLR

Office of the County Counsel, County of Santa Clara
70 West Hedding St. East Wing, 9th Floor, San José, CA 95110
(408) 299-5900

# TABLE OF CONTENTS

**INTEREST OF *AMICI CURIAE*** ............................................................................1

**ARGUMENT** ..........................................................................................................1

    **I. The ACA Enables Local Governments to Provide Better Healthcare** ......................1

    **II. Discrimination Against Our LGBTQ Residents Imperils Public Health and Welfare**..................................................................................................4

    **III. The Final Rule Undermines the Trust Necessary for Healthy Communities** ........8

**CONCLUSION** .......................................................................................................9

*Amicus Curiae* Brief by Local Government *Amici*
in Support of Plaintiff
2:20-cv-01105-JLR

Office of the County Counsel, County of Santa Clara
70 West Hedding St. East Wing, 9th Floor, San José, CA 95110
(408) 299-5900

**TABLE OF AUTHORITIES**

<u>**CASES**</u>

*Bostock v. Clayton County Georgia,*
   140 S. Ct. 1731 (2020)....................................................................................4

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,*
   140 S. Ct. 1891 (2020)....................................................................................1

*Franciscan All., Inc. v. Azar,*
   414 F. Supp. 3d 928 (N.D. Tex. 2019) ..........................................................8

*Franciscan All., Inc. v. Burwell,*
   227 F. Supp. 3d 660 (N.D. Tex. 2016) ..........................................................8

*King v. Burwell,*
   135 S. Ct. 2480 (2015)....................................................................................3

*Nat'l Fed'n of Indep. Bus. v. Sebelius,*
   567 U.S. 519 (2012)........................................................................................2

*Roberts v. U.S. Jaycees,*
   468 U.S. 609(1984)........................................................................................4

*Romer v. Evans,*
   517 U.S. 620 (1996)........................................................................................9

*Texas v. United States,*
   340 F. Supp. 3d 579 (N.D. Tex. 2018) ..........................................................8

<u>**OTHER AUTHORITIES**</u>

Larisa Antonisse et al., Kaiser Family Found.,
   *The Effects of Medicaid Expansion Under the ACA: Updated Findings from a*
   *Literature Review* (Mar. 28, 2018) ....................................................................3

Maureen R. Benjamins & Steven Whitman,
   *Relationships Between Discrimination in Health Care and Health Care Outcomes*
   *Among Four Race/Ethnic Groups,* 37 J. Behav. Med. 403 (2014)......................6

Valarie K. Blake,
   *Remedying Stigma-Driven Health Disparities in Sexual Minorities,* 17 Housing J.
   Health L. & Pol'y (2017) ..................................................................................4

Ctrs. for Disease Control & Prevention,
   *Coronavirus Disease 2019: People Who Are at Higher Risk* (Apr. 15, 2020)...................3

Eileen Condon et al.,
   *Associations Between Maternal Experiences of Discrimination and Biomarkers of*
   *Toxic Stress in School-Aged Children,* 23 Maternal & Child Health J. 1147 (2019)..........6

ii

*Amicus Curiae* Brief by Local Government *Amici*     Office of the County Counsel, County of Santa Clara
in Support of Plaintiff     70 West Hedding St. East Wing, 9th Floor, San José, CA 95110
2:20-cv-01105-JLR     (408) 299-5900

Nia J. Heard-Garris et al.,
    *Transmitting Trauma: A Systematic Review of Vicarious Racism and Child Health*,
    199 Soc. Science & Med. (2018) ........................................................................................6

Gregory M. Herek,
    *Confronting Sexual Stigma and Prejudice: Theory and Practice*, 63 J. Soc. Issues 905
    (2007) ................................................................................................................................4

Human Rights Campaign,
    *San José, California 2019 Municipal Equality Index Scorecard* ......................................7

Lambda Legal,
    *When Health Care Isn't Caring: Lambda Legal's Survey of Discrimination Against
    LGBT People and People with HIV* (2010) ......................................................................4

Larissa A. McGarrity & David M. Huebner,
    *Is Being Out About Sexual Orientation Uniformly Healthy?: The Moderating Role of
    Socioeconomic Status in a Prospective Study of Gay and Bisexual Men*, 47 Annals
    Behav. Med. 28 (2014) ......................................................................................................6

Nat'l Ass'n of Cty's,
    *Counties' Role in Health Care Delivery and Financing* (July 2007) ...............................2

Office of Disease Prevention and Health Promotion,
    *Access to Health Services*, Healthy People 2020 ............................................................6

Office of Disease Prevention and Health Promotion,
    *Discrimination*, Healthy People 2020 .............................................................................6

Yin Paradies,
    *A Systematic Review of Empirical Research on Self-reported Racism and Health*, 35
    Int'l J. Epidemiology 888 (2006) ......................................................................................5

Elizabeth A. Pascoe & Laura Smart Richman,
    *Perceived Discrimination and Health: A Meta-Analytic Review*, 135 Psych. Bull. 513
    (2009) ................................................................................................................................5

Eileen Salinsky,
    Nat'l Health Policy Forum, *Governmental Public Health: An Overview of State and
    Local Public Health Agencies* (Aug. 18, 2010) ...............................................................2

Benjamin T. Squire et al.,
    *At-Risk Populations and the Critically Ill Rely Disproportionately on Ambulance
    Transport to Emergency Departments*, 56 Annals Emergency Med. 341 (2010) ..............2

The Nat'l Academies' Inst. of Med.,
    *Care Without Coverage: Too Little, Too Late* (2002) ......................................................2

Sarah Wamala et al.,
    *Perceived Discrimination, Socioeconomic Disadvantage and Refraining from
    Seeking Medical Treatment in Sweden*, 61 J. Epidemiology Community Health 409
    (2006) ................................................................................................................................5

iii

*Amicus Curiae* Brief by Local Government *Amici*                    Office of the County Counsel, County of Santa Clara
in Support of Plaintiff                    70 West Hedding St. East Wing, 9th Floor, San José, CA 95110
2:20-cv-01105-JLR                    (408) 299-5900

David R. Williams et al.,
*Racial/Ethnic Discrimination and Health: Findings From Community Studies*, 93
Am. J. Pub. Health 200 (2003) ..........................................................................................5

Williams Institute, UCLA Sch. of Law,
*How Many Same-Sex Couples in the US Are Raising Children*? (2018)...........................6

Williams Institute, UCLA Sch. of Law,
*Research Report on LGB-Parent Families* (2014) ............................................................6

## RULES AND REGULATIONS

45 C.F.R. pt. 92 ................................................................................................................1

81 Fed. Reg. 31,376 ........................................................................................................1

85 Fed. Reg. 37,160 ........................................................................................................1

## STATUTES

42 U.S.C. § 300gg..............................................................................................................3

42 U.S.C. § 300gg-1...........................................................................................................3

42 U.S.C. § 300gg-3...........................................................................................................3

42 U.S.C. § 300gg-4...........................................................................................................3

42 U.S.C. § 300gg-4...........................................................................................................3

42 U.S.C. § 300gg-11.........................................................................................................3

42 U.S.C. § 300gg-12.........................................................................................................3

42 U.S.C. § 300gg-19.........................................................................................................3

42 U.S.C. § 18022 ..............................................................................................................3

iv

*Amicus Curiae* Brief by Local Government *Amici*
in Support of Plaintiff
2:20-cv-01105-JLR

Office of the County Counsel, County of Santa Clara
70 West Hedding St. East Wing, 9th Floor, San José, CA 95110
(408) 299-5900

**INTEREST OF *AMICI CURIAE*[1]**

*Amici* are 31 counties, cities, and towns located throughout the United States, including throughout the State of Washington.  *Amici* range from sprawling seaport cities such as Seattle, to rugged, rural mountain cities such as Driggs, Idaho.  Notwithstanding our differences, *amici* are united in our opposition to the U.S. Department of Health and Human Services' (HHS) Affordable Care Act (ACA) Section 1557 Final Rule.[2]  The Final Rule withdraws nondiscrimination protections from many of our most at-risk residents in intimate and important healthcare contexts, gutting HHS's prior 2016 Rule.[3]  It eliminates Section 1557's nondiscrimination protections based on sexual orientation and gender identity, excludes health insurance and non-ACA health programs from nondiscrimination obligations, and exempts religious entities from providing nondiscriminatory care, among other things.[4]  In so doing, the Final Rule directly harms our residents, communities, and local governments, and erodes our ability to foster inclusive communities in which everyone has the right to respect and the opportunity to lead a healthy, independent life.  By utterly ignoring these harms, HHS violates the basic requirements of administrative rulemaking.  *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1915 (2020).  The Final Rule should be preliminarily enjoined.

**ARGUMENT**

**I.   The ACA Enables Local Governments to Provide Better Healthcare**

As local governments, *amici* are responsible, often by legal mandates and always by practical realities, for protecting the health and safety of our communities.  We assist children and the elderly,

---

[1] No counsel for a party authored this brief in whole or in part, and no party or counsel for a party made a monetary contribution intended to fund the preparation or submission of this brief.  No person other than *amici* or their counsel made a monetary contribution to this brief's preparation or submission.  Counsel for all parties consented to the filing of this brief.

[2] Nondiscrimination in Health and Health Education Programs or Activities, Delegation of Authority, 85 Fed. Reg. 37,160 (June 19, 2020) (to be codified at 42 C.F.R. pts. 438, 440, & 460 and 45 C.F.R. pts. 86, 92, 147, 155, & 156) ("Final Rule").

[3] Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31,376 (May 18, 2016) (formerly codified at 45 C.F.R. pt. 92) (2016 Rule) ("2016 Rule").

[4] The Final Rule imposes numerous other extremely harmful provisions, but *amici* address only these three provisions because they form the exclusive basis for the State of Washington's preliminary injunction motion.

*Amicus Curiae* Brief by Local Government *Amici*
in Support of Plaintiff
2:20-cv-01105-JLR

1

Office of the County Counsel, County of Santa Clara
70 West Hedding St. East Wing, 9th Floor, San José, CA 95110
(408) 299-5900

1   operate law enforcement agencies and jail facilities, provide emergency medical transportation and

2   safety-net healthcare services, and, as we have witnessed recently all across the nation during the

3   COVID-19 pandemic, perform critical public health work.  *Amici* administer the "smaller

4   governments closer to the governed" "that touch on citizens' daily lives."  *Nat'l Fed'n of Indep. Bus.*

5   *v. Sebelius*, 567 U.S. 519, 536 (2012) (*NFIB*).  *Amici* are often the only entities with the ability to

6   perform these vital public functions that are necessary for our residents to be healthy, productive

7   members of society.

8           *Amici* are also obligated to provide many healthcare services to our residents regardless of

9   their ability to pay.[5]  We do not, and cannot, condition emergency transportation in our ambulances,

10  examination and treatment in our public health clinics and emergency departments, emergent care in

11  our safety-net hospitals, or use of our suicide hotlines or mobile crisis services on one's ability to

12  pay the bill.  *See NFIB*, 567 U.S. at 593 (opinion of Ginsburg, J.).  Thus, when our residents are less

13  healthy or more reliant on safety-net services, *amici* incur greater direct costs.

14          *Amici* bear massive, but avoidable, direct costs from the less effective, less timely, and more

15  expensive care people seek when they delay or forgo healthcare.  For example, in the County of

16  Santa Clara, it costs thousands more to treat an uninsured person who contracts HIV/AIDS than it

17  does to provide that resident with preventative one-pill-a-day pre-exposure prophylaxis (PrEP)

18  medication.  Without primary and preventative care, prescription drugs, and early diagnosis and

19  treatment, our residents are sicker and more costly to treat, and also more likely to access healthcare

20  through highly costly means, such as by ambulance calls or emergency department visits.[6]  In the

---

[5] *See, e.g.*, Nat'l Ass'n of Cty's, *Counties' Role in Health Care Delivery and Financing* 3, 5-15 (July 2007), *archived at* https://perma.cc/Z6SX5JD5; Eileen Salinsky, Nat'l Health Policy Forum, *Governmental Public Health: An Overview of State and Local Public Health Agencies* 9-10 (Aug. 18, 2010), *archived at* https://perma.cc/E48M-ADZH.

[6] "Because those without insurance generally lack access to preventative care, they do not receive treatment for conditions—like hypertension and diabetes—that can be successfully and affordably treated if diagnosed early on. When sickness finally drives the uninsured to seek care, once treatable conditions have escalated into grave health problems, requiring more costly and extensive intervention."  *NFIB*, 567 U.S. at 594 (internal citations omitted) (opinion of Ginsburg, J.); *see also* The Nat'l Academies' Inst. of Med., *Care Without Coverage: Too Little, Too Late* (2002)**,** *archived at* https://perma.cc/T542-Q8YP; Benjamin T. Squire et al., *At-Risk Populations and the Critically Ill Rely Disproportionately on Ambulance Transport to Emergency Departments*, 56 Annals Emergency Med. 341, 346 (2010)**.**

2

*Amicus Curiae* Brief by Local Government *Amici*
in Support of Plaintiff
2:20-cv-01105-JLR

Office of the County Counsel, County of Santa Clara
70 West Hedding St. East Wing, 9th Floor, San José, CA 95110
(408) 299-5900

1    absence of capable, culturally competent care, our residents are more likely to develop chronic

2    diseases—the persistent, prevalent, but preventable conditions such as hypertension, diabetes, certain

3    heart diseases, and obesity, that are among the most common and costly of America's health

4    problems, and that increase the risk of severe illness from COVID-19.[7]  Without early behavioral

5    healthcare, mental health and substance use costs also swell, potentially forcing *amici* to divert finite

6    funds from other critical functions or to further tax the public.

7         By prohibiting discrimination in healthcare and enhancing access to care, the ACA allowed

8    many *amici* to deliver the ongoing primary and preventative healthcare services that produce better

9    health outcomes for our residents sooner, in more appropriate settings, and at lesser expense.  With

10   the support of the ACA's health insurance expansions and its array of patient-protective provisions,[8]

11   state and local governments have saved billions in reduced uncompensated care costs in the decade

12   since the ACA was enacted.[9]

13        The Final Rule threatens these gains.  It is intended and expected to reduce individuals'

14   access to needed insurance benefits, promote refusals of needed services, authorize discriminatory

15   and substandard care, and, ultimately, disconnect entire communities from the primary and

16   preventative healthcare services that lead to better health outcomes at lesser expense.  "It is

17   implausible that Congress meant the Act to operate in this manner."  *King v. Burwell*, 135 S. Ct.

18   2480, 2493 (2015).

19   / / /

20   / / /

21

22   _____

23   [7] Ctrs. for Disease Control & Prevention, *Coronavirus Disease 2019: People Who Are at Higher Risk* (Apr. 15, 2020), *archived at* https://perma.cc/UR8W-LNYU.

24   [8] *See, e.g.*, 42 U.S.C. §§ 300gg-1, 300gg-3, 300gg-4(a) (preventing health insurance denials because of people's pre-existing conditions); 300gg, 300gg-4(b) (barring higher premium charges based on health

25   status); 300gg-11 (prohibiting lifetime or annual limits on the value of essential health benefits); 300gg-12 (banning rescission, a previously common practice where insurance companies rescinded coverage when the

26   insured suffered a catastrophic illness); 300gg-19 (guaranteeing beneficiaries the right to appeal adverse coverage decisions); 18022(c) (imposing annual out-of-pocket maximums for covered benefits).

27   [9] *See, e.g.*, Larisa Antonisse et al., Kaiser Family Found., *The Effects of Medicaid Expansion Under the ACA: Updated Findings from a Literature Review* 8-11 (Mar. 28, 2018), *archived at* https://perma.cc/GU93-U9DE.

28
                                                    3

*Amicus Curiae* Brief by Local Government *Amici*                          Office of the County Counsel, County of Santa Clara
in Support of Plaintiff                                              70 West Hedding St. East Wing, 9th Floor, San José, CA 95110
2:20-cv-01105-JLR                                                                                      (408) 299-5900

**II.  Discrimination Against Our LGBTQ Residents Imperils Public Health and Welfare**

Laws embodying a "commitment to eliminating discrimination … serve[] compelling state interests of the highest order." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 624 (1984). Nondiscrimination laws like Section 1557, which embody this commitment, make it clear that everyone deserves equal treatment and safety in the delivery of their healthcare.  Despite this commitment in the ACA, and despite the dispositive and recent command of the Supreme Court in *Bostock v. Clayton County Georgia*, 140 S. Ct. 1731 (2020), the Final Rule nevertheless enshrines exclusion into Section 1557's facially neutral federal nondiscrimination provisions.  The Final Rule *itself* stigmatizes and harms.

As the State of Washington details, the Final Rule also enables healthcare providers to reject, humiliate, demean, and discriminate against people in need of life-affirming and lifesaving healthcare.  Such discrimination is already rampant:  in a 2010 survey, 70 percent of transgender respondents and nearly 56 percent of lesbian, gay, or bisexual respondents reported "being refused needed care; health care professionals refusing to touch them or using excessive precautions; health care professionals using harsh or abusive language; being blamed for their health status; or health care professionals being physically rough or abusive."[10]  In a study of LGBTQ adults, "13% reported having objects thrown at them, 23% reported being threatened with violence, . . . almost half were targets of verbal abuse," and "21% reported violence or a property crime."[11]

The discrimination that the Final Rule enacts and invites harms health in ways that endure beyond a specific encounter or episode.  The lasting negative effects of discrimination on health are well-researched, abundant, and severe: discrimination "has a significant negative effect on both mental and physical health, . . . produces significantly heightened stress responses, and is related to

---

[10] Lambda Legal, *When Health Care Isn't Caring: Lambda Legal's Survey of Discrimination Against LGBT People and People with HIV* (2010), *archived at* https://perma.cc/UF9F-444M.

[11] Valarie K. Blake, *Remedying Stigma-Driven Health Disparities in Sexual Minorities*, 17 Housing J. Health L. & Pol'y 181, 201-02 (2017), *archived at* https://perma.cc/Q3Q4-J554 (citing Gregory M. Herek, *Confronting Sexual Stigma and Prejudice: Theory and Practice*, 63 J. Soc. Issues 905, 908-09 (2007)).

4

*Amicus Curiae* Brief by Local Government *Amici*
in Support of Plaintiff
2:20-cv-01105-JLR

Office of the County Counsel, County of Santa Clara
70 West Hedding St. East Wing, 9th Floor, San José, CA 95110
(408) 299-5900

participation in unhealthy and nonparticipation in healthy behaviors."[12]  Discrimination is linked by

substantial evidence to a range of negative mental health outcomes, including depression,

psychological distress, anxiety, and diminished well-being.[13]  Physically, discrimination causes

"exaggerated cardiovascular responses to stress," as exhibited by changes in blood pressure and

cortisol levels and other negative physical effects, all of which "may erode an individual's protective

resources and increase vulnerability to physical illness" and "lead to wear and tear on the body."[14]  It

thus increases the risk of certain diseases, such as depression, obesity, schizophrenia, heart disease,

metabolic syndrome, rheumatoid arthritis, fibromyalgia, and allergic conditions.[15]  Discrimination

also "leave[s] individuals with less energy or resources for making healthy behavior choices," which

leads to "health behaviors that have clear links to disease outcomes," as well as "nonparticipation in

behaviors that promote good health," such as seeking preventative healthcare.[16]  Indeed, people who

experience frequent discrimination are three to nine times less likely to seek healthcare.[17]  When

patients who face or fear facing discrimination from their healthcare providers do seek medical care,

the care they receive is less effective.  The patients are less likely to disclose important clinical

information,[18] less likely to comply with their providers' recommendations, and more likely to report

---

[12] Elizabeth A. Pascoe & Laura Smart Richman, *Perceived Discrimination and Health: A Meta-Analytic Review*, 135 Psych. Bull. 513, 513 (2009).

[13] *Id.* (citing Yin Paradies, *A Systematic Review of Empirical Research on Self-reported Racism and Health*, 35 Int'l J. Epidemiology 888–901 (2006); David R. Williams et al., *Racial/Ethnic Discrimination and Health: Findings From Community Studies*, 93 Am. J. Pub. Health 200–08 (2003)).

[14]*Id.* at 513-14.

[15] *Id.* at 544.

[16] Elizabeth A. Pascoe & Laura Smart Richman, *Perceived Discrimination and Health: A Meta-Analytic Review*, 135 Psych. Bull. 513, 514 (2009) (describing how discrimination leads individuals to make decisions that lead to health negatives outcomes, such as smoking, alcohol and substance abuse, and unprotected sex, and to avoid protective behaviors, such as cancer screenings and diabetes self-management).

[17] Sarah Wamala et al., *Perceived Discrimination, Socioeconomic Disadvantage and Refraining from Seeking Medical Treatment in Sweden*, 61 J. Epidemiology Community Health 409, 409 (2006), *archived at* https://perma.cc/9R2P-VPK6.

[18] Valarie K. Blake, *Remedying Stigma-Driven Health Disparities in Sexual Minorities*, 17 Housing J. Health L. & Pol'y 181, 211 (2017).

5

*Amicus Curiae* Brief by Local Government *Amici*
in Support of Plaintiff
2:20-cv-01105-JLR

Office of the County Counsel, County of Santa Clara
70 West Hedding St. East Wing, 9th Floor, San José, CA 95110
(408) 299-5900

1   receiving poor quality care.[19]  Concealing one's LGBTQ status from a healthcare provider, in

2   particular, is associated with worse mental health outcomes, greater risk of cancer, greater risk of

3   infectious disease, and more rapid HIV symptoms.[20]  HHS itself is well aware of the harms of

4   discrimination, including against LGBTQ people in particular, and recognizes discrimination as a

5   key component of individual and public health.[21]

6         The harms from discrimination ripple out into our communities as a whole.  When our

7   LGBTQ community members are subjected to discrimination, the welfare of their children is also

8   jeopardized, including the welfare of the foster and adopted children whom same-sex couples so

9   often rear and raise.[22]  Discrimination against a parent or caregiver is associated with poor health

10   outcomes for children, including potentially lasting physical, mental, socioemotional, and

11   developmental harms.[23]  The cascading costs of discrimination are especially expensive for local

12   governments, which bear primary responsibility for managing public safety-net benefits, economic

13   supports, child welfare systems, and emergency and transitional housing.

14

15

---

16   [19] Maureen R. Benjamins & Steven Whitman, *Relationships Between Discrimination in Health Care and Health Care Outcomes Among Four Race/Ethnic Groups*, 37 J. Behav. Med. 403 (2014).

17

18   [20] Valarie K. Blake, *Remedying Stigma-Driven Health Disparities in Sexual Minorities*, 17 Housing J. Health L. & Pol'y 181, 211 (2017) (citing Larissa A. McGarrity & David M. Huebner*, Is Being Out About Sexual Orientation Uniformly Healthy?: The Moderating Role of Socioeconomic Status in a Prospective Study of Gay and Bisexual Men*, 47 Annals Behav. Med. 28, 28–29 (2014)).

19

20   [21] Office of Disease Prevention and Health Promotion, *Discrimination*, Healthy People 2020, *archived at* https://perma.cc/C3GG-3VKD (HHS decade-long Healthy People 2020 public health campaign); *see also* Office of Disease Prevention and Health Promotion, *Access to Health Services*, Healthy People 2020, *archived at* https://perma.cc/8HB4-WLZV.

21

22   [22] Williams Institute, UCLA Sch. of Law, *How Many Same-Sex Couples in the US Are Raising Children*? (2018), *archived at* https://perma.cc/56AA-HJJJ (finding "[s]ame-sex couples with children were far more likely than male/female couples with children to have an adopted child (21.4% versus 3.0%) and/or a foster child (2.9% versus 0.4%)"); Williams Institute, UCLA Sch. of Law, *Research Report on LGB-Parent Families* (2014), *archived at* https://perma.cc/S3QP-UVHG  ("Same-sex couples are approximately 4.5 times more likely than different-sex couples to be rearing adopted children.").

23

24

25   [23] Eileen Condon et al., *Associations Between Maternal Experiences of Discrimination and Biomarkers of Toxic Stress in School-Aged Children*, 23 Maternal & Child Health J.  1147-51 (2019); *see also* Nia J. Heard-Garris et al., *Transmitting Trauma: A Systematic Review of Vicarious Racism and Child Health*, 199 Soc. Science & Med. 230-40 (2018), *archived at* https://perma.cc/WVJ5-Z7EW ) (longitudinal meta-analysis finding vicarious discrimination against caregivers associated with physical, mental, socioemotional, and developmental harms for children).

26

27

28

*Amicus Curiae* Brief by Local Government *Amici*             Office of the County Counsel, County of Santa Clara
in Support of Plaintiff                                   70 West Hedding St. East Wing, 9th Floor, San José, CA 95110
2:20-cv-01105-JLR                                              (408) 299-5900

Many *amici* invest heavily to help counteract the weight of healthcare discrimination against their LGBTQ residents.  The City of Chicago funds community-based organizations that specialize in providing care for LGBTQ residents who face discrimination from multiple intersectional characteristics, and it hires its own City staff solely to provide LBGTQ-specific resources.  Howard County invests in outreach, community engagement work, and complaint investigations to serve its LGBTQ residents. The City of Oakland contracts for safe spaces for its LGBTQ children and youth based on its real-world recognition of the harms from rejection and discrimination to children and the need for care linkages and referrals to welcoming and supportive providers.  The County of Los Angeles conducts provider education on how to competently care for transgender and gender nonconforming patients and also runs an LGBTQ committee for each of its medical centers.  These policies make a palpable difference: LGBTQ patients consistently report that accessing care at the County's medical centers has changed their lives.  The City of West Hollywood launched an HIV Zero Initiative to reduce the spread of, and harms from, HIV/AIDS, targeting its LGBTQ community because nearly all new HIV infections in the City are among gay and bisexual men.

Even in jurisdictions with deep commitments to inclusivity, discrimination against LGBTQ people in healthcare is pervasive.  The County of Santa Clara, for example, has long been a leader in supporting LGBTQ rights—becoming the first county in the nation to establish an office dedicated to serving the LGBTQ community and, later, the first health system in its region to open a clinic specializing in healthcare for transgender, non-binary, and gender diverse people.  The County's Office of LGBTQ Affairs has delivered trainings on how to provide LGBTQ-competent care to thousands of healthcare providers and champions LGBTQ community engagement work to build trust in County services.  San José, the largest city in the County, earns a 100% score on the Human Rights Campaign's municipal equality index.[24]  Yet nondiscrimination in healthcare in the County remains a major need and focus.  The County regularly receives complaints about providers who deliberately call patients by the wrong names and the wrong pronouns, ask unnecessary questions

---

[24] Human Rights Campaign, *San José, California 2019 Municipal Equality Index Scorecard*, *archived at* https://perma.cc/4PL6-L2EQ.

*Amicus Curiae* Brief by Local Government *Amici*
in Support of Plaintiff
2:20-cv-01105-JLR

Office of the County Counsel, County of Santa Clara
70 West Hedding St. East Wing, 9th Floor, San José, CA 95110
(408) 299-5900

about patients' genitals, house people in residential treatment settings in ways that threaten their safety, and block access to gender-affirming care.  The County's Gender Health Center was never meant to be the primary point of service for thousands of LGBTQ residents, yet all too often it must serve as just that due to discrimination elsewhere.  Until recently, many primary care providers in the County who serve high numbers of LGBTQ patients did not know that they had LGBTQ patients, let alone that they were failing them and failing to offer critical medications and screenings to prevent costly lifelong conditions such as HIV/AIDS.

**III. The Final Rule Undermines the Trust Necessary for Healthy Communities**

The primary and preventative healthcare transformation that the ACA enabled depends on trust—the trust that it takes to seek care, early and proactively; the trust that it takes to undergo intimate examination and treatment; and the trust to listen and comply with a doctor's orders. Discrimination in healthcare shatters that trust.  So much more must be done before even our most inclusive health systems offer truly welcoming supportive care that earns the trust of all our patients. The Final Rule eliminates even the hope that nondiscriminatory care is a shared goal.  It directly harms our residents, communities, and local governments and frays the fragile trust that *amici* invest so much to create.  These harms are all the more urgent and irreparable in the midst of a pandemic in which our collective health so clearly depends on that of our neighbors.

Contrary to all of the foregoing, Defendants say the Final Rule will have "minimal" practical effect because Defendants already made much of the 2016 Rule ineffective by failing to appeal orders partially enjoining and then vacating it,[25] and because some states, localities, and covered entities may protect patients anyway.[26]  If the effect of the 2020 Rule were indeed minimal,

---

[25] The same court that declared the entire 900-page omnibus ACA unconstitutional and invalid because of a single sentence also partially enjoined and vacated the 2016 Rule.  *See Texas v. United States*, 340 F. Supp. 3d 579 (N.D. Tex. 2018), *affirmed in part, reversed in part*, 945 F.3d 355, *cert granted*, Nos. 19-1019 & 19-840 (U.S. 2020); *Franciscan All., Inc. v. Burwell*, 227 F. Supp. 3d 660, 696 (N.D. Tex. 2016) (partially enjoining the 2016 Rule); *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 947 (N.D. Tex. 2019) (partially vacating the 2016 Rule).  Defendants' unreviewable decision not to appeal that court's vacatur of the 2016 Rule cannot now insulate Defendants' rule change from judicial review.

[26] 85 Fed. Reg. at 37,225.

8

*Amicus Curiae* Brief by Local Government *Amici*
in Support of Plaintiff
2:20-cv-01105-JLR

Office of the County Counsel, County of Santa Clara
70 West Hedding St. East Wing, 9th Floor, San José, CA 95110
(408) 299-5900

1  Defendants' symbolic effort to make LGBTQ people "unequal to everyone else" would be all the

2  more concerning.  *See Romer v. Evans*, 517 U.S. 620, 635 (1996).  Instead, however, the 2020 Rule

3  creates and compounds harmful and costly health disparities, even in jurisdictions like the State of

4  Washington that are committed to pluralism and respect for everyone.

5                                                        **CONCLUSION**

6         *Amici* urge the Court to preliminarily enjoin the Final Rule.

7

8  Dated:  August 7, 2020                               Respectfully submitted,
                                                        JAMES R. WILLIAMS
9                                                       COUNTY COUNSEL

10

11                                            By:  */s/ Lorraine Van Kirk*
                                                   James R. Williams, County Counsel
12                                                 Greta S. Hansen, Chief Assistant County Counsel
                                                   Douglas M. Press, Assistant County Counsel
13                                                 Laura S. Trice, Lead Deputy County Counsel
                                                   Jeremy A. Avila, Deputy County Counsel
14                                                 Lorraine Van Kirk, Deputy County Counsel
                                                   Mary E. Hanna-Weir, Deputy County Counsel
15                                                 70 West Hedding Street, East Wing, Ninth Floor
                                                   San José, California  95110-1770
16                                                 *Attorneys for the County of Santa Clara, California*

17

18  By:  */s/ Erica R. Franklin*                        Mark A. Flessner
         Peter S. Holmes                                Corporation Counsel, City of Chicago
19       City Attorney, City of Seattle                 Stephen J. Kane, Deputy Corporation Counsel
         Erica R. Franklin, Assistant City Attorney     Rebecca Hirsch, Assistant Corporation Counsel
20       701 Fifth Avenue, Suite 2050                   121 North LaSalle Street, Room 600
         Seattle, WA 98104                              Chicago, IL 60602
21       *Attorneys for City of Seattle, Washington*    *Attorneys for the City of Chicago, Illinois*

22

23

24

25

26

27

28
                                                       9

*Amicus Curiae* Brief by Local Government *Amici*          Office of the County Counsel, County of Santa Clara
in Support of Plaintiff                                70 West Hedding St. East Wing, 9th Floor, San José, CA 95110
2:20-cv-01105-JLR                                                                          (408) 299-5900

1

***Additional Counsel for Amici Curiae***

2

Esteban A. Aguilar, Jr.
City Attorney, City of Albuquerque
3
One Civic Plaza NW, 4th Floor, Room 4072
Albuquerque, NM 87102
4
*Attorney for the City of Albuquerque, New Mexico*

5

Anne L. Morgan
6
City Attorney
P.O. Box 1546
7
Austin, TX 78701
*Attorney for the City of Austin, Texas*
8

9

Nick Herman
Counsel for the Town of Carrboro
10
The Brough Law Firm
1526 East Franklin Street, Suite 200
11
P.O. Box 2388
Chapel Hill, NC 27514
12
*Attorney for the Town of Carrboro, North Carolina*

13

Zach Klein
14
City Attorney, City of Columbus
77 North Front Street, 4th Floor
15
Columbus, OH 43215
*Attorney for the City of Columbus, Ohio*
16

17

Jessica M. Scheller
Chief; Advice, Business & Complex Litigation Division
18
Cook County State's Attorney's Office
500 Richard J. Daley Center
19
Chicago, IL 60602
*Counsel for Cook County, Illinois*
20

21

Barbara J. Doseck,
City Attorney, City of Dayton
22
101 West Third Street
P.O. Box 22
23
Dayton, OH  45401
*Attorney for the City of Dayton, Ohio*
24

25

Stephen P. Zollinger
City Attorney, City of Driggs
26
P.O. Box 280
Rexburg, ID 83440
27
*Attorney for the City of Driggs, Idaho*

28

10

*Amicus Curiae* Brief by Local Government *Amici*
in Support of Plaintiff
2:20-cv-01105-JLR

Office of the County Counsel, County of Santa Clara
70 West Hedding St. East Wing, 9th Floor, San José, CA 95110
(408) 299-5900

1

Rebecca St. George
City Attorney, City of Duluth
411 West 1st Street, Room 440
Duluth, MN 55802
*Attorney for the City of Duluth, Minnesota*

2

3

4

David Hall
City Attorney, City of Everett
2930 Wetmore Avenue, Suite 10 A
Everett, WA 98201
*Attorney for the City of Everett, Washington*

5

6

7

8

Ronald C. Lewis
City Attorney, City of Houston
City of Houston Legal Department
900 Bagby, 4th Floor
Houston, Texas 77002
*Attorney for The City of Houston, Texas*

9

10

11

12

Gary W. Kuc,
County Solicitor, Howard County
Howard County Office of Law
3450 Court House Drive
Ellicott City, MD 21043
*Attorney for Howard County, Maryland*

13

14

15

16

Michael N. Feuer
City Attorney, City of Los Angeles
Office of the Los Angeles City Attorney
200 North Main Street, 8th Floor
Los Angeles, CA 90012
*Attorney for the City of Los Angeles, California*

17

18

19

20

Mary C. Wickham
County Counsel, County of Los Angeles
Scott Kuhn
Cesar del Peral
Katherine G. McKeon
Hannah Flores
648 Kenneth Hahn Hall of Administration
500 West Temple Street
Los Angeles, CA 90012
*Attorneys for the County of Los Angeles, California*

21

22

23

24

25

26

27

28

11

*Amicus Curiae* Brief by Local Government *Amici*
in Support of Plaintiff
2:20-cv-01105-JLR

Office of the County Counsel, County of Santa Clara
70 West Hedding St. East Wing, 9th Floor, San José, CA 95110
(408) 299-5900

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Christopher J. Forte
Assistant General Counsel, City of Middletown
Office of the General Counsel
245 deKoven Drive
Middletown, CT 06457
*Attorney for the City of Middletown, Connecticut*

James E. Johnson
Corporation Counsel, City of New York
100 Church Street
New York, NY 10007
*Attorney for the City of New York, New York*

Barbara J. Parker
City Attorney, City of Oakland
One Frank H. Ogawa Plaza, 6th Floor
Oakland, CA 94612
*Attorney for the City of Oakland, California*

Tracy Reeve
City Attorney, City of Portland
1221 SW Fourth Avenue, Room 430
Portland, OR 97204
*Attorney for the City of Portland, Oregon*

Adam B. Fogleman
Pulaski County Attorney
201 South Broadway, Suite 400
Little Rock, AR 72201
*Attorney for County of Pulaski, Arkansas*

Dennis J. Herrera
City Attorney, City and County of San Francisco
City Hall Room 234
One Dr. Carlton B. Goodlett Place
San Francisco, CA 94102
*Attorney for the City and County of San Francisco, California*

Lyndsey M. Olson
City Attorney, City of Saint Paul
400 City Hall and Court House
15 West Kellogg Boulevard
Saint Paul, MN 55102
*Attorney for the City of Saint Paul, Minnesota*

Anthony P. Condotti
Atchison, Barisone & Condotti, APC
P.O. Box 481
Santa Cruz, CA 95061
*Attorney for the City of Santa Cruz, California*

12

*Amicus Curiae* Brief by Local Government *Amici*
in Support of Plaintiff
2:20-cv-01105-JLR

Office of the County Counsel, County of Santa Clara
70 West Hedding St. East Wing, 9th Floor, San José, CA 95110
(408) 299-5900

1

2

3

Jason M. Heath
County Counsel, County of Santa Cruz
701 Ocean Street, Room 505
Santa Cruz, CA 95060
*Attorney for the County of Santa Cruz, California*

4

5

6

7

Howard Phillip Schneiderman
Senior Deputy Prosecuting Attorney, King County
King County Prosecuting Attorney's Office
516 Third Avenue, W400
Seattle, WA  98104
*Counsel for King County, Washington and Public Health – Seattle & King County*

8

9

10

11

Francis X. Wright, Jr.
City Solicitor, City of Somerville
93 Highland Avenue
Somerville, MA 02143
*Attorney for the City of Somerville, Massachusetts*

12

13

14

Terry J. Williams
Solicitor, State College, PA
243 South Allen Street
State College, PA 16801
*Attorney for the Borough of State College, Pennsylvania*

15

16

17

18

William Fosbre
City Attorney, City of Tacoma
747 Market Street
Tacoma, WA 98402
*Attorney for the City of Tacoma, Washington*

19

20

21

22

David A. Escamilla
Travis County Attorney
Annalynn Cox
P. O. Box 1748
Austin, TX 78767
*Attorneys for Travis County, Texas*

23

24

25

26

Michael Jenkins
City Attorney, City of West Hollywood
Best Best & Krieger LLP
1230 Rosecrans Avenue, Suite 110
Manhattan Beach, CA 90266
*Attorney for the City of West Hollywood, California*

27

28

13

*Amicus Curiae* Brief by Local Government *Amici*
in Support of Plaintiff
2:20-cv-01105-JLR

Office of the County Counsel, County of Santa Clara
70 West Hedding St. East Wing, 9th Floor, San José, CA 95110
(408) 299-5900

1

**CERTIFICATE OF SERVICE**

2

3        I hereby certify that on August 7, 2020, the foregoing document was filed with the Clerk of

4 the Court, using the CM/ECF system, causing it to be served on all counsel who have entered an

5 appearance.  I further certify that on August 7, 2020, service of the foregoing document will be

6 accomplished via electronic mail to William.Lane2@usdoj.gov and via FedEx Overnight Delivery to

7 the following:

8

9        William K. Lane III
         Counsel to the Assistant Attorney General
10       Civil Division
         U.S. Department of Justice
11       950 Pennsylvania Avenue, N.W.
         Washington, D.C. 20530
12

13

14

15       Dated: August 7, 2020

16                                              _/s/ Kimberly Ide_____
                                                     Kimberly Ide
17

18  2254610

19

20

21

22

23

24

25

26

27

28

*Amicus Curiae* Brief by Local Government *Amici*                    Office of the County Counsel, County of Santa Clara
in Support of Plaintiff                                    70 West Hedding St. East Wing, 9th Floor, San José, CA 95110
2:20-cv-01105-JLR                                                                (408) 299-5900